UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JAMES SWEENEY, GERARD HILL, GARY
DONNELLY, VIRGINIA SWEENEY, ALAN JACOBY,
EDWIN ACOSTA, EDWARD PRIOR, GARRY
KENNEY, JEANIE LEKOSKI, TIMOTHY MULVIHILL,
JOSE MERCADO, on behalf of themselves and all
others similarly situated,

         Plaintiffs,      **MEMORANDUM AND
                    ORDER**
    -against-         CV 08-4417 (ARL)

UNITED STATES POSTAL SERVICE, JOHN E.
POTTER, POSTMASTER GENERAL,

         Defendants.
--------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

    Plaintiffs, who are past and present mail carriers at the Smithtown Post Office,

commenced this employment discrimination action against defendants United States Postal

Service ("USPS") and its Postmaster General, John E. Potter[1] ("defendants") alleging that they

were subjected to age discrimination, a hostile work environment and retaliation in violation of

the Age Discrimination Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA").   In addition,

plaintiff Virginia Sweeney alleges an individual claim of discrimination on the basis of a

disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*  The parties

have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636.  Before the court

are defendants' (i) motion for partial summary judgment pursuant to Federal Rule of Civil

Procedure ("Rule") 56; and (ii) motion to strike plaintiffs' demand for a trial by jury on their

---

[1] Patrick R. Donahoe replaced John Potter as Postmaster General on October 25, 2010.
Plaintiffs are directed to file a  motion of substitution pursuant to Fed. R. Civ. P. 25 to reflect the
appropriate defendant in this action.

claims under the ADEA.  For the reasons set forth below, defendants' motions are granted.

# BACKGROUND

## A.    Factual Background

The material facts, drawn from the Complaint and the parties' respective Local Civil Rule 56.1 ("Rule 56.1") Statements of Facts, are construed in the light most favorable to plaintiff, the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

In late 2004, Frank Capozolli was selected for the position of Postmaster at the Smithtown Post Office.  (Defs. 56.1 Stmt. ¶ 8.)[2]  John Lunghi was the Route Examination Adjustment Team Leader for the Long Island District, and his duties were to examine mail carrier routes to ensure efficiency at the various Long Island Post Offices.  (*Id.* at ¶ 9.)  Lunghi reported to and received assignments from Ron Mirro, the USPS Manager of Operations Support for the Long Island District.  (*Id.*)  In May 2005, Miro sent Lunghi to the Smithtown Post Office to examine their mail routes because the USPS's carrier reports reflected that the hours expended on the routes had increased.  (*Id.* at ¶ 10.)  After his review, Lunghi reported that all the mail routes were taking more than the allotted eight hours of time to complete in a day.  (*Id.*)

During the summer of 2005, Lunghi, Capozolli and other USPS management worked with representatives of the National Association of Letter Carriers (the "Union") to determine what adjustments should be made to bring the completion time to eight hours.  (*Id.* at ¶ 12.)  Over an approximately three month period, USPS management and Union representatives gathered and analyzed existing information from the routes.  (*Id.* at ¶ 13.)   The route adjustments

---

[2]Unless otherwise noted, where a party's Rule 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

were completed in October 2005, but the adjustments were not implemented (and the routes changed) until January 2006.  (*Id.* at ¶ 16.)   The routes, as adjusted by USPS management and the Union, were then put up for bid in December 2005, to be awarded in January 2006, and carriers with the most seniority had priority in picking their routes.  (*Id.* at ¶¶ 16-17.)

In January 2007, plaintiff Gerard Hill contacted Joseph Popiden, an EEOC attorney, because he concluded that the Smithtown Post Office management was targeting older workers and had created a hostile working environment.  (*Id.* at ¶ 19.)  On January 5, 2007, Hill contacted an EEO counselor.  (*Id.*)  Two days later, Hill told another letter carrier, plaintiff James Sweeney,[3] that he had contacted an EEO counselor, and Hill and Sweeney worked together to file a class EEO complaint for age discrimination.  (*Id.* at ¶ 20.)  With Sweeney's assistance, Hill wrote and signed an Information for Pre-Complaint Counseling on January 12, 2007 for age discrimination, writing the words "class action" on the first page, identifying himself as "agent," and reflecting that he had first contacted an EEO counselor on January 5, 2007.  (*Id.* at ¶ 21.) Attached to the Information for Pre-Complaint Counseling was an undated letter which Sweeney had helped draft setting forth seven "[e]xamples of mistreatment" by which "management has created an extremely hostile workplace":

> (1) withholding of pay without cause; (2) excessive and unwarranted discipline; (3) verbal threats; (4) conflicting instructions to create the opportunity for more discipline; (5) total disregard of contract rights; (6) overstaffing of management by as much as four times the number required to implement an extreme managerial style; and (7) search a seizure of employees' personal effects on the street in view of customers.

(*Id*. ¶ 22.)

---

[3]Sweeney had concluded at the end of 2006 that management was targeting older workers.  (*Id.*)

Hill circulated the letter to mail carriers and asked them to show their consent by signing next to their name on a carrier seniority list,[4] and on April 5, 2007 Hill signed and submitted an EEO Complaint of Discrimination in the Postal Service (the "EEO Complaint") alleging discrimination on the basis of age.[5]  (*Id.* at ¶¶ 23-24.)   In response to box 15 of the EEO Complaint which asked for the "Dates on Which Alleged Act(s) of Discrimination Took Place," Hill wrote "multiple incidents from 10/2006 to present."  (*Id.* ¶ 25.)  In response to item 16 of the EEO Complaint which asked to "[e]xplain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against you . . . because of your . . . age," Hill wrote the following:

> [a]s a representative for this Class Action, I claim that we were discriminated against based on age.  We allege that (1) [m]anagement used intimidation, harassment, threats and bullying to either separate, terminate or force the resignation of senior employees; (2) management is treating the Class Action group with no dignity, respect and fairness; (3) management is withholding [] employees pay without just cause; (4) management gives excessive quantity and unwanted disciplinary actions; (5) management used verbal threats toward employees; (6) management gave conflicting instructions to create opportunity for more discipline; (7) management showed total disregard of contractual rights with an attitude of "Grieve it if you don't like it"; (8) management was overstaffed in order to implement its extreme managerial style; (9) management's search and seizure of employees personal affects on the street in view of patrons; and (10) management created an extremely hostile work environment and failed to provide a safe and harmonious place to work for employees.

(*Id.* at ¶ 26.)

By decision dated June 20, 2007, the EEOC Administrative Judge denied certification of

---

[4]Before filing the EEO Complaint, Hill and Sweeney held a meeting at Sweeney's home and spoke to 40 to 50 carriers to advise them of the status of the EEO matter.  (*Id.* at ¶ 24.)

[5]Attached to the EEO Complaint, was the undated letter and signed employee seniority list previously attached to the Information for Pre-Complaint Counseling.  (*Id.* at ¶ 27.)

a class and sent the case back for processing as an individual complaint. (*Id.* at ¶ 28.) The

decision was affirmed by a Notice of Final Action dated July 2, 2007. (*Id.*)

Following the Notice of Final Action, individual letter carriers[6] contacted EEO counselors

and filed identical individual Information for Pre-Complaint Counseling, all of which set the

period in which the discriminatory actions began as of October 2006 and referred to the EEO

Complaint filed by Hill as a class action. (*Id.* at ¶ 29.) In response to Section C of the

Information for Pre-Complaint Counseling, which asked to describe the incident or action that

prompted seeking EEO counseling, the individuals wrote:

> From on or about October 2006 and continuing I was subjected to a hostile work
> environment, harassment in regards to but not limited to working conditions,
> threats, withholding of pay, excessive and unwarranted disciplinary actions,
> seizure of personal effects and failure to provide a safe work environment. For
> documentation see agency case #4A-117-0037-17. On July 10th I received
> notification that I was denied a class action. I would like to pursue an individual
> complaint now because I was told I couldn't file while class action was active.

(*Id.*) Individual letter carriers[7] then filed identical EEO Complaints which set the dates on which

the alleged discriminatory acts took place as on or about October 2006 to January 2007 and

referred to the EEO Complaint filed by Hill as a class action. (*Id.* at ¶ 30.) In response to Item

16 of the EEO Complaints, which asked to "[e]xplain the specific action(s) or situation(s) that

resulted in you alleging that you believe you were discriminated against you . . . because of your .

. . age," each individual incorporated the allegations set forth in the EEO Complaint filed by Hill

---

[6]The individual carriers included Stephanie Brown, Edwin Acosta, Edwin Anderson, Paul
Celentano, James Feigel, Alan Jacoby, Timothy Mulvihill, Frank Pingerra, Pamela Rizzo, Joseph
Schneider and Ira Storch. (*Id.* at ¶ 29.)

[7]The individual carriers included Stephanie Brown, Paul Celentano, Alan Jacoby,
Timothy Mulvihill, Frank Pingerra, Pamela Rizzo, Joseph Schneider and Ira Storch. (*Id.* at ¶ 31.)

as a class action, stating:

> [b]ecause the burden of documentation should not be placed on the complainant, refer to the record of investigation for agency complaint #4a 117 0037-07 and EEOC Hearing # 520-2007-00356x."

(*Id*. at ¶ 31.)

## B.    Procedural History

Plaintiff James Sweeney commenced the instant action on October 30, 2008, and on January 28, 2009 plaintiffs Sweeney, Gerald Hill, Gary Donnelly, Virginia Sweeney, Alan Jacoby, Edwin Acosta, Edward Prior, Garry Kenney, Jeanie Lekoski, Timothy Mulvihill, and Jose Mercado filed an amended complaint on behalf of themselves and all other similarly situated ("plaintiffs") alleging discrimination on the basis of age and retaliation for complaints of age discrimination in violation of the ADEA.  In addition, plaintiff Virginia Sweeney alleges an individual claim of discrimination on the basis of a disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq.  On February 8, 2010, the parties consented to the undersigned's jurisdiction.  On April 15, 2010, this court conditionally certified this case as a collective action pursuant to 29 U.S.C. § 216 of the Fair Labor Standards Act ("FLSA") and 29 U.S.C. § 626 of the ADEA.  (Order, dated April 15, 2010.)

The class was conditionally certified to include mail carriers employed at the Smithtown Post Office from January 2006 to November 2007.  (*Id*.)  By Order dated June 1, 2010, this court granted plaintiffs a 90-day notice period, *viz*. From May 24, 2010 to August 24, 2010, in which to notice persons eligible to opt-in as plaintiffs.  Presently, there are 41 plaintiffs comprised of the

eleven named plaintiffs in the amended complaint and the thirty plaintiffs who timely opted in.[8]

Defendants now move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking to dismiss (a) all claims based on discrimination under the ADEA for any incidents occurring before October 2006; (b) all claims alleging discrimination under the ADEA due to the January 2006 reorganization of the mail routes; (c) the ADEA claims of 21 plaintiffs who did not lose any wages as a result of the alleged discrimination or who base their claims of lost wages on barred and untimely incidents; (d) Count II of the amended complaint, which asserts a claim under the ADEA that the USPS's policies had a disparate impact on plaintiffs; (e) the ADEA claims of 9 persons who filed consents to become opt-in plaintiffs on March 23, 2012; and (f) Count IV of the amended complaint which asserts an individual claim under the Rehabilitation Act.  In addition, defendants move for entry of an order to strike plaintiffs' demand for trial by jury of their claims asserted under the ADEA.  Each will be addressed in turn.

## DISCUSSION

### I.      Applicable Law and Legal Standards

---

[8]The plaintiffs who opted in are: Matthew Abbattiello (Dkt. Entry No. 22), Neil Ambrosio (Dkt. Entry No. 35), Edward Anderson (Dkt. Entry No. 3), Gerry Bobb (Dkt. Entry No. 38), Stephanie Brown (Dkt. Entry No. 37), Paul Celentano (Dkt. Entry No. 24), Daniel Collura (Dkt. Entry No. 7), Patrick Curley (Dkt. Entry No. 25), Donna Ernst (Dkt. Entry No. 36), Salvatore Evola (Dkt. Entry No. 6), James Feigel (Dkt. Entry No. 7), Anthony Garofalo (Dkt. Entry No. 8), Christopher Gill (Dkt. Entry No. 34), Michael Goldstein (Dkt. Entry No. 9), Anthony Ianella (Dkt. Entry No. 11), Regina Ianella (Dkt. Entry No. 28), Glenn James (Dkt. Entry No. 13), Frank Mancini (Dkt. Entry No. 28), Joseph Michels (Dkt. Entry No. 15), John Monteiro (Dkt. Entry No. 29), Frank Pinggera (Dkt. Entry No. 30), Pamela Rizzo (Dkt. Entry No. 40), Raymond Scevola (Dkt. Entry No. 32), William Sheehy (Dkt. Entry No. 41), Joseph Schneider (Dkt. Entry No. 33), Maureen Schubert (Dkt. Entry No. 43), Jeffrey Starker (Dkt. Entry No. 18), Ira Storch (Dkt. Entry No. 17), Cynthia Timpone (Dkt. Entry No. 21), and Timothy Wright (Dkt. Entry No. 42).

### A.      Summary Judgment

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). However, "the judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

In deciding an employment discrimination case, the Court of Appeals for the Second Circuit has cautioned that "intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citations and internal quotation marks omitted). At the same time, the Court held that "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Id.* "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

### B.    McDonnell-Douglas Burden-Shifting Framework

The ADEA states that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

In the absence of direct evidence of discriminatory conduct, plaintiffs' claims for employment discrimination based on age are analyzed under the three step, burden-shifting

analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)[9]. *See Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir. 2010); *see also Gannon v. United Parcel Serv.,* No. 12-3556-cv, 2013 WL 3603432, at *1 (2d Cir. July 16, 2013). Under *McDonnell Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell Douglas* framework and its presumptions and burdens disappear, and, thus, (3) the burden shifts back to the plaintiff to show without the benefit of any presumptions that "a reasonable jury could conclude by a preponderance of the evidence that age was a 'but for' cause for the challenged adverse employment action and not just a contributing or motivating factor." *See Gorzynski,* 596 F.3d at 106-07 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *see Gorzynski,* 596 F.3d at 107.

## II.    Claims Based on Alleged Incidents of Discrimination Prior to October 2006

Defendants contend that the claims under the ADEA which are based on alleged incidents of discrimination before October 2006 must be dismissed for failure to exhaust administrative

---

[9]Plaintiff Virginia Sweeney's individual employment discrimination claim brought under the Rehabilitation Act is likewise analyzed under the burden-shifting framework of *McDonnell Douglas*. *See Sheafte-Carter v. Donohue*, No. 11-CV-4128, 2013 WL 4458746, at *4 (E.D.N.Y. Aug. 16, 2013) ("When evaluating claims under the Rehabilitation Act, courts in this district follow the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

remedies because plaintiffs failed to raise these claims in their administrative complaints.

### A. Administrative Exhaustion

Prior to bringing an ADEA discrimination claim in a federal district court, a federal government employee must first exhaust his or her administrative remedies. *See Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir. 2001) (ADEA); *Burke v. Gutierrez,* No. 04 Civ. 7593, 2006 WL 89936, at *11 (S.D.N.Y. Jan. 12, 2006) ("[federal employee] plaintiffs are generally precluded from raising in district court action claims not presented in the administrative complaint"). "Exhaustion of administrative remedies through the EEOC is an essential element of the . . . ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Tanvir v. New Yokr City Health & Hosp. Corp.,* 480 Fed. Appx. 620, 621 (2d Cir. 2012) (internal quotation marks and citation omitted); *see Barroso v. Office of Gen. Counsel,* No. 12-CV-625 (RRM)(JMA), 2013 WL 4048496, at *4 (E.D.N.Y. Aug. 9, 2013). The failure to exhaust administrative remedies in a timely fashion is not a jurisdictional bar but a requirement that, like a statute of limitations, is "subject to waiver, estoppel and equitable tolling." *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996) (citations omitted).

An ADEA lawsuit may be commenced in a federal district court in one of two ways, *viz*. "(i) thirty days after giving notice to the EEOC of an intent to file suit," *see* 29 U.S.C. §§ 633(a)(d), or "(ii) after receiving notice of a final administrative decision on a timely-filed discrimination complaint," *see* 29 C.F.R. §§ 1614.110, 1614.407. *Wrenn v. Secretary, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990). "However, once a aggrieved employee chooses the administrative process, he [or she] becomes obliged to timely exhaust administrative remedies before he may pursue an ADEA claim in federal court." *Miller v. Potter*, No. 07-CV-

1767 (JFB)(ETB), 2007 WL 4615611, at *2 (E.D.N.Y. Nov. 29, 2007) (internal quotation marks and citation omitted).  Here, because plaintiffs chose to pursue their remedies through the administrative process, the court only considers whether plaintiffs timely complied with that process.

Pursuant to 29 C.F.R. § 1614.105(a)(1), a federal employee alleging discrimination on the basis of age must initiate contact with an EEO counselor within 45 days of the alleged discriminatory act.  29 C.F.R. § 614.105(a)(1); *see Mathirampuzha v. Potter,* 548 F.3d 70, 74-75 (2d Cir. 2008) (holding suits against federal agencies under the ADEA  are governed by regulations promulgated by the EEOC, namely 29 C.F.R. §§ 1614.101 *et seq.*).   As Judge Mukasey explained:

> If a claimant has not met the filing requirements, either directly or with the aid of equitable tolling, there is no waiver of sovereign immunity, and accordingly, no subject matter jurisdiction.  Put differently, the government has not consented to be sued by a federal employee who has neither met with [his or] her EEO counselor within 45 days of the alleged discriminatory act, nor satisfactorily explained [the] failure to do so.

*Dillard v. Runyon,* 928 F. Supp. 1316, 1325 (S.D.N.Y. 1996), *aff'd* 108 F.3d 1369 (2d Cir. 1997).   The failure of a plaintiff to timely contact an EEO counselor is grounds for a dismissal of plaintiff's action.  *See Belgrave,* 254 F.3d at 386; *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 765 (2d Cir. 1998) (explaining that "discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court"), *abrogated in part on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see also Moultrie v. Potter,* No. 04 Civ. 6887 RCC GWG, 2006 WL 1495234, at *5 (S.D.N.Y. May 31, 2006).

"While a plaintiff's EEOC charge should be construed liberally, especially for a *pro se* plaintiff,

there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Shepherd v. BCBG Max Azria Group, Inc.,* No. 11 Civ. 7634 (RJS)(AJP), 2012 WL 4832883, at *23 (S.D.N.Y. Oct. 11, 2012) (internal quotation marks and citations omitted).

In the instant matter, the record shows that throughout the administrative process pursued by plaintiffs both as a class and as individuals, their claims consistently specified the earliest date on which the alleged discrimination occurred as October 2006. With respect to the class action charge, plaintiff Hill contacted an EEO counselor on January 5, 2007, submitted a class action Information for Pre-Complaint Counseling on January 12, 2007 for age discrimination which was circulated to and signed by letter carriers at the Smithtown Post Office, and filed a class action EEO Complaint for Discrimination on April 5, 2007. In response to Box 15, which asked the "Date on Which Alleged Act(s) of Discrimination Took Place," Hill specified that the plaintiffs complained of "multiple incidents from 10/2006 to present." The record reflects that plaintiff Hill, the "class agent" who contacted an EEO counselor and filed the EEO complaint, and plaintiff James Sweeney, who assisted him, decided to start the period when the discriminatory acts began as October 2006 because that is when there was "[a]n increase in discipline that was being issued. . . . Just the whole tenor of the work-room floor; increase in discipline; general treatment of the workers." (Defs. 56.1 Stmt. ¶ 25; Defs. Ex. 14 at 71-73.)

With respect to the individual administrative charges, after the EEOC Administrative Judge denied class certification, the individual plaintiffs filed identical EEO Complaints specifying the period that the allegedly discriminatory actions as occurring "from on or about October 2006 to January 2007." Every one of the plaintiffs' EEO complaints identified both the

earliest and latest period of time in which the discrimination took place with no hint of discriminatory conduct occurring prior to October 2006.  That is to say, throughout the EEO process plaintiffs never identified discriminatory events or conduct occurring prior to October 2006.  Hence, any claims of discriminatory acts occurring prior to October 2006 fall outside the ambit of the EEO charge.  *See Alfieri v. SYSCO Food* Servs*.-Syracuse,* 192 F. Supp. 2d 14, 22-23 (W.D.N.Y. 2001) ("plaintiff's EEOC charge . . . specifically alleges that the discrimination occurred only from December 1998 until April 23, 1999.  Therefore, it cannot be disputed that plaintiff's claims based on incidents occurring prior to December 1998 were not included in her charge"); *Rivera v. Baccarat, Inc.*, No. 95 CIV. 9478 (MBM), 1996 WL 251850, at *2 (S.D.N.Y. May 10, 1996) (plaintiff " identified both the earliest and the latest date on which the discrimination took place as July 14, 1995, the date she was fired. . . .  Where a plaintiff is quite specific in her EEOC charge, she cannot bring a civil action on the basis of claims outside the scope of the charge").  Nevertheless, plaintiffs argue that the claims which are based on alleged incidents of discrimination before October 2006 should not be dismissed because they are reasonably related to the claims contained in the administrative complaint.

###    B.    Reasonably Related Claims

"Generally, federal courts may not hear claims not alleged in the employee's EEOC charge."  *Malachi v. Postgraduate Center for Mental Health*, No. 10-CV-3527 (RRM)(LB), 2013 WL 782614, at *2 (E.D.N.Y. Mar. 1, 2013) (citations omitted).   Although exhaustion is ordinarily an essential element of an ADEA claim, the Second Circuit has recognized that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those filed with the agency."  *Shah v. N.Y.S. Dep't of*

*Civil Serv.*, 168 F.3d 610, 613 (2d Cir. 1999) (citation omitted); *see Legnani v. Alitalia Linee*

*Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001) (per curiam). "A claim raised for the

first time in the district court is reasonably related to allegations in an [EEO] charge where the

conduct complained of would fall within the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination[10]." *Holtz v. Rockefeller &*

*Co.,* 258 F.3d 62, 83 (2d Cir. 2001) (internal quotation marks and citations omitted). The

purpose of the notice provision, which is "to encourage settlement of discrimination disputes

through conciliation and voluntary compliance, would be defeated if a complainant could litigate

a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. & Tel.*

*Corp.,* 755 F.2d 20, 26 (2d Cir. 1985); *see Marinelli v. Chao,* 222 F. Supp. 2d 402, 411

(S.D.N.Y. 2002). Thus, reasonably related "means that despite the claimant's having failed to

specify the precise charge, the EEOC likely would have investigated the conduct complained of

anyway." *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006); *see*

*Mathirampuzha*, 548 F.3d at 76. Plaintiffs have not presented sufficient evidence that the claims

set forth in the instant amended complaint are reasonably related to the administrative charges

---

[10]Two other kinds of "reasonably related" conduct may be considered: "where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge"; and "where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (quotations omitted). Neither is applicable in this case as the claims based on conduct prior to October 2006 did not arise after the charge was filed. *See Guerrero v. FJC Sec. Servs. Inc.,* No. 10 Civ. 9027 (JPO), 2012 WL 2053535, at *4 (S.D.N.Y. June 5, 2012) ("The reasonably related doctrine does not excuse a plaintiff's failure to include allegations in his administrative complaint where those allegations pertained to conduct that had occurred before the administrative complaint was filed"); *Sussle v. Sirina Protection Sys. Corp.,* 269 F. Supp. 2d 285, 315 (S.D.N.Y. 2003) (same); *Hall v. City of New York,* No. 00 Civ. 8967 (GEL), 2002 WL 472057, at *4 (S.D.N.Y. March 27, 2002) (same); *see also Barroso v. Office of General Counsel*, No. 12-CV-625 (RRM)(JMA), 2013 WL 4048496, at *4 (E.D.N.Y. Aug. 9, 2013) (same).

filed with the EEO.

As a preliminary matter, "any claims arising prior to [October 2006] are not reasonably related as plaintiff[s] could have raised them at the EEOC." *Barroso*, 2013 WL 4048496, at *4 (internal quotation marks and citation omitted). Plaintiffs could have amended their EEO complaints any time prior to the conclusion of the EEO investigation to provide notice to the EEO so the EEO could perform its function and investigate the charge. *See* 29 C.F.R. § 1614.106 ("[a] complainant may amend a complaint any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint"). Here, however, plaintiffs did not amend their administrative complaints but rather continued to identify the commencement of the discriminatory acts as October 2006 even after the EEOC denied class certification of the action in July 2007. From late 2007 to early 2008, plaintiffs filed individual Informations for Precomplaint Counseling and EEO Complaints which specified October 2006 as the date the alleged discrimination commenced and which incorporated the allegations in the class EEO complaint filed by Hill. (Defs. 56.1 Stmts. ¶¶ 28-31, Exs. 17-22.)

Moreover, the claims in the amended complaint do not fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination because throughout the administrative process plaintiffs never claimed of discriminatory conduct prior to October 2006 and there is no evidence that plaintiffs omitted those claims by mistake. *See Milano v. Astrue*, No. 05 Civ. 6527 (KMW)(DCF), 2008 WL 4410131, at *29 (S.D.N.Y. Sept. 26, 2008) (noting that this category of "reasonably related" situations "appears to contemplate a situation in which a complainant mistakenly omits a particular claim from a timely-filed EEOC charge") (citing *Butts v. New York Dep't of Housing Preservation and Dev.*,

990 F.2d 1397, 1402-03 (2d Cir. 1993), *abrogated by statute on other grounds, Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 693 (2d Cir. 1998).  To the contrary, plaintiffs first sought to add these claims after the EEO process concluded and they had filed the within action.  In their opposition to the within motion Plaintiffs

> admit that Sweeney and Hill chose October 2006 as the date when the discriminatory acts began because at the time of the filing the April 2007 EEO complaint, October 2006 were "when the incidents that *we were aware of* started happening."  Subsequently, both Sweeney and Hill learned from other carriers and became aware that widespread discriminatory harassment that targeted mail carriers 40 years of age and above started with and was the result of the January 2006 reorganization of the routes.

(Pls. 56.1 Counterstmt ¶ 25 (emphasis in original).)

Plaintiffs argue that in April 2007  Sweeney and Hill had not learned from the carriers and were themselves unaware of  alleged widespread discrimination prior to October 2006.  Plaintiffs argument is unsupported by the record.  The following excerpts from plaintiff Sweeney's deposition indicates that in April 2007, sixteen months after the 2006 reorganization of the routes, Sweeney and Hill consulted the letter carriers and purposefully identified October 2006 as the date the discriminatory acts began:

> Q.    How did you decide that they began happening in October of 2006?
> A.    Because, I believe, by this point in April, so many people were expressing outrage at what was going on that they were requesting something be done.  We had some meetings that took place with the workers, and from the input from everybody, those were the dates that were arrived at.
>       *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
> Q.    What incidents began in October of 2006?
> A.    An increase in discipline that was being issued/
> Q.    Okay, anything else?
> A.    Just the whole tenor of the work-room floor; increase in discipline; general treatment of the workers.
> Q.    Did you rely on any – what information did you rely on to determine that there was an increase in discipline from October of 2006?

A.    Information given to me by the other letter carriers in the office.
Q.    Oral information?
A.    Orally and copies of their letters of warning.
Q.    Anything else?
A.    Suspensions and such and such.
Q.    So other carriers give you copies of their letters of warnings and suspensions?
A.    Yes.
Q.    Did you have any other written information?
A.    No – Oh, wait, yes, we had a PDI log.

(Defs. 56.1 Stmt. ¶ 25, Ex. 14 at 72-73.)  The record further shows that Hill and Sweeney had

consulted with the other letter carriers before filing the April 2007 charge, had held a meeting at

Sweeney's home to discuss the EEO matter with 40 to 50 carriers, and had circulated a petition

outlining the alleged discrimination in the EEO complaint which approximately 60 mail carriers

signed.  (*Id.* ¶¶ 21-24.)  That petition was attached to both the Information for Pre-Complaint

Counseling dated January 12, 2007 and to the April 2007 EEO Complaint.  (*Id.* ¶¶ 22, 27; Exs.

15, 16.)  And as discussed *supra*, when the EEOC denied class certification, the individual

plaintiffs continued to set the period in which the discriminatory conduct began as October 2006

and incorporated the allegations in the EEO class action complaint.

Finally, having reviewed the factual allegations set forth in the administrative charge with

the amended complaint, the court finds it is not reasonable to conclude that the allegations in the

EEO charges would have prompted an investigation of plaintiffs' earlier complaints of

discriminatory conduct.  In the EEO Complaint that Hill filed as a class action and which was

adopted by the individual plaintiffs in their individual administrative charges, plaintiffs

complained of the multiple incidents of discriminatory acts which had occurred "from on or

about October 2006 and continuing," namely, forced resignation, unfair treatment, withholding

pay, excessive discipline, verbal threats, conflicting instructions, disregard of contractual rights,

overstaffing of management, seizure of personal effects, and a hostile work environment. (*Id.* at ¶ 26.) In contrast, the claims alleged by the individual and representative plaintiffs in the instant complaint relate to a general claim of harassment and a hostile work environment occurring at a different time, *viz.* January 2006 and to discrete incidents such as rearrangement of cases in an employee's office, spying on an employee during his lunch with his wife in a park, an employee's poor evaluation by an outside supervisor, ordering an employee to come to work on his day off, reorganization of an employee's mail route, and requesting an employee to show identification to outside supervisor, each occurring prior to October 2006. (Amended Compl. ¶¶ 47-48, 73, 78, 83, 90, 91, 94, 138.) Based on plaintiffs' administrative charges, one can hardly say that the EEOC likely would have investigated the wholly disparate incidents, individuals and allegations of discrimination occurring at a different period of time that are now referenced in plaintiffs' amended complaint.

In summary, given that plaintiffs' claims of discriminatory conduct prior to October 2006 fall outside the scope of their administrative complaints and are not reasonably related to the allegations of the EEO charges nor could reasonably be expected to grow out of such allegations, plaintiffs are precluded from pursuing these claims in the instant action. Accordingly, defendants' motion for partial summary judgment dismissing claims of discrimination based on incidents that occurred before October 2006 is granted.

## II. Claims Based on the January 2006 Reorganization of the Mail Routes

Defendants contend that the claims under the ADEA which are based on the January 2006 reorganization of the mail routes must be dismissed for failure to exhaust administrative remedies because plaintiffs failed to raise these claims in their administrative complaints.

As discussed *supra*, plaintiffs' are precluded from pursuing claims of discrimination based on events that occurred prior to October 2006, including claims based on the January 2006 reorganization of the mail routes, because the claims fall outside the ambit of the plaintiffs' EEO complaints as well as fall outside the scope of an EEOC investigation which could reasonably be expected to grow out of the EEO charges. The record fails to show a single reference or complaint about the January 2006 reorganization in any of the class action or individual Informations for Precomplaint Counseling and the EEO complaints, and thus the claims of discrimination based on the January 2006 reorganization, first made in the instant action after the EEO proceedings were completed, do not provide the requisite notice to the EEOC. (Defs. 56.1 Stmt. ¶¶ 27-31.) Nonetheless, plaintiffs argue that the discriminatory conduct in their administrative complaints was part and parcel of the reorganization of routes that were implemented in January 2006. (Pls. Mem. in Opp., at 21.) Plaintiffs' proffer 22 affidavits submitted in this action (for the purpose of certifying this case as a collective action) and three depositions of plaintiffs in this case who aver "that the discriminatory harassment of older carriers by USPS management began after the routes were organized on or about January 2006." (Pls. 56.1 Counterstmt ¶¶ 23, 27.) Plaintiffs' argument is unavailing.

Even assuming *arguendo* that plaintiffs' claims of discrimination based on the 2006 reorganization were reasonably related to the administrative charge and would therefore fall within the scope of an EEOC investigation which can reasonably be expected to grow out of the charge, plaintiffs would be precluded from raising the claims because the January 2006 reorganization was a discrete act which had to be timely exhausted. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed

charges." *National Railroad Passengers Corp. v. Morgan*, 536 U.S. 101,113 (2002). "The rationale behind the discrete act rule is that when a plaintiff is harmed by a discrete act, he should be aware of it; to permit him to wait and toll the running of the statute simply by asserting a series of separate wrongs were committed . . . would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation" of claims. *Stephens v. Hofstra Univ. Sch. of Law*, No. 01-CV-5388 (DRH)(MLO), 2005 WL 1505601, at *4 (E.D.N.Y. June 24, 2005) (internal quotation marks and citation omitted). If "there is a reasonable ascertainable date on which the act . . . occurred, that is the day on which the statute" begins to run. *Malarkey v. Texaco, Inc,.* 559 F. Supp. 117, 121 (S.D.N.Y. 1982) (internal quotation marks omitted), *aff'd*, 704 F.2d 674 (2d Cir. 1983)(per curiam). Significantly, the "reasonable ascertainable date" controls even where "an employee continues to feel the effects of a discriminatory act on the part of the employer." *Lightfoot v.Union Carbide Corp.,*110 F.3d 898, 907 (2d Cir 1997).

Here, the reorganization of the mail carriers' routes was implemented and the mail routes of the carriers were changed in January 2006. Because the plaintiffs first contacted an EEO counselor on January 5, 2007, one year following the reorganization, the claim is time-barred. Although plaintiffs claim that final adjustments to certain of the routes were not made until April 2006, (Pls. 56.1 Counterstmt ¶ 16), in either case, plaintiffs failed to timely contact an EEO counselor within the requisite 45 days. *See Lightfoot,*110 F.3d at 907 (holding "a job transfer or discontinuance of a particular job assignment" are discrete discriminatory acts that are not actionable if time barred); *Gorokhovsky v. City of New York*, No. 10 Civ. 8848 (LBS), 2011 WL 2019423, at *5 (S.D.N.Y. May 19, 2011) (same); *Plant v. Deutsche Bank Securities, Inc.,* No. 07 Civ. 3498 (AKH), 2007 WL 2187109, at *2-4 (S.D.N.Y. July 23, 2007) ("discrete acts include

job transfer, discontinuance of a job assignment . . . . [J]ob assignments, transfers, reorganizations, and the like are actionable, if at all, when they happen"); *see, e.g., Guerrero v. FJC Security Services, Inc.,* No. 10 Civ. 9027 (JPO), 2012 WL 2053535, at *3 (S.D.N.Y. June 5, 2012) (dismissing claims arising out of defendants' discrete act of reassigning plaintiff from a five-day work schedule to a four-day work week as time-barred for failure to file timely EEOC complaint); *Harris v. Huntington Sch. Dist.,* No. 06-CV-3879 (DGT), 2009 WL 875538, at *9 (E.D.N.Y. Mar. 30, 2009) (dismissing claims arising out of defendants' discrete act of "reassigning [plaintiff] to work the night shift . . . effectively denying him the opportunity to work overtime").

Accordingly, defendants' motion for partial summary judgment dismissing claims of discrimination based on the January 2006 reorganization of the mail routes is granted.

## III. Failure to Claim Lost Wages and/or Failure to Timely Exhaust

Defendants contend that the ADEA claims of plaintiffs who (a) did not claim lost wages and claim only damages for emotional distress; (b) claim lost wages due to the January 2006 reorganization; and (c) last worked at the Smithtown Office before October 2006 and could not claim lost wages for the period specified in the EEO complaint must be dismissed because an employee's damages under the ADEA are limited to lost wages. The court agrees.

"Damages are an essential element of an ADEA claim, and in the absence of an available remedy, the ADEA claim must be dismissed." *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 205 (E.D.N.Y. 2010) (citing *Lightfoot,* 110 F.3d at 909-10) (affirming on summary judgment the dismissal of an ADEA claim where damages were unavailable as a matter of law); *see Shaheen v. Gonzales*, No. 05 Civ. 8400 (LBS), 2006 WL 3164763, at *8 (S.D.N.Y. Nov. 1,

2008) ("an inability to prove damages is grounds for dismissal"). Indeed, "[a] government employee's damages under the ADEA are limited to lost wages." *Shaheen*, 2006 WL 3164763, at *8; *see also Smith v. Office of Personnel Mgt.*, 778 F.2d 258, 269 (5th Cir. 1985) (holding that in federal employees actions under the ADEA Congress intended to waive sovereign immunity only to the extent of lost wages). Thus, under the ADEA, "the only remedies available are make-whole remedies such as back pay, front pay and reinstatement." *Hatter v. New York City Hous. Auth.*, No. 97-9351-cv, 1998 WL 743733, at *1 (2d Cir. 1998) ("The ADEA does not provide for compensatory or punitive damages"); *see Commissioner of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995) ( observing that the "Courts of Appeals have unanimously held . . . that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress"); *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 147-48 (2d Cir. 1984) (no recovery for emotional distress and punitive damages under the ADEA).

In its Discovery Demand dated January 31, 2011, defendants asked each named and opt-in plaintiff to respond to Interrogatory No. 15:

> [s]tate whether you claim that you have lost any salary, wages or other compensation as a result of the alleged incidents of discrimination and retaliation in this action. If so, state the amount of such loss and identify the dates you claim you lost salary, wages and compensation and identify the alleged incidents of discrimination and retaliation . . . which caused you to incur the above losses.

(Defs. 56.1 Stmt. ¶ 39.) In their respective responses, the following plaintiffs state they do not claim lost wages, salary or other compensation as a result of defendants' practices: Matthew Abbatiello, Neil Ambrosio, Edward Anderson Donna Ernst, Michael Goldstein, Glenn James, Timothy Mulvihill, Frank Pinggera, Maureen Schubert, and Timothy Wright. (*Id*. at ¶ 40, Exs.

23, 30-38.)  In addition, plaintiff Kenney testified at his deposition that he lost no pay as a result

of age discrimination.  (*Id.* ¶ 56, Ex. 12 at 42.)  Further, although plaintiff Edwin Acosta claimed

he lost overtime, at his deposition Acosta stated that he lost overtime because he took himself off

the overtime lists to care for his brother. (*Id.* ¶ 54, Ex. ZZ at 67-68.)  Accordingly, defendants'

motion for partial summary judgment to dismiss the claims of these plaintiffs is granted.

In addition, the following plaintiffs' claim damages only for lost overtime wages due to

the January 2006 reorganization: Gerard Hill, Anthony Garofalo, Christopher Gill, Ira Storch,

Jeffrey Starker and Joseph Schnieder.  (*Id*. at ¶¶ 43-53, 58-59.)  As discussed *supra*, inasmuch as

claims based on the January 2006 reorganization are time-barred, these plaintiffs' claims for

damages based on the reorganization are not recoverable.  Accordingly, defendants' motion for

partial summary judgment to dismiss the claims of these plaintiffs is granted.

Finally,  the claims of plaintiffs Gerard Bobb, Daniel Collura and Jose Mercado are not

actionable in that each had last worked at the Smithtown Post Office before October 2006, the

time period specified in the EEO complaint as the time when the alleged discriminatory acts

began.  The record shows that plaintiff Bobb retired in March 2006, and although plaintiff

Collura retired effective October 1, 2006, the last day Collura was physically present in the

Smithtown Post Office was September 1, 2006.  (*Id*. at ¶¶ 33-34.)   To the extent plaintiffs Bobb

and Collura claim they were forced to retire due to defendants' alleged discriminatory conduct,

such claims would be for constructive discharge, a discrete act, which as discussed *supra* had to

be, but was not, timely exhausted by contacting an EEO counselor within 45 days. *See, e.g.,*

*Madray v. Long Island Univ.*, No. 10-CV-3841 (ADS)(WDW), 2012 WL 2923500, at *10

(E.D.N.Y. July 16, 2012) (finding constructive discharge is a discrete act and concluding that the

plaintiff "failed to exhaust her constructive discharge claim because it was neither within the scope of the amended charge nor could reasonably have been expected to grow out of the EEOC investigation"). With respect to plaintiff Mercado, the record reveals that Mercado last worked at the Smithtown Post Office on August 12, 2006, when he was sent home because of an incident with a supervisor, was thereafter placed on off-duty status, and on September 21, 2006 received a Notice of Removal. (*Id*. at ¶ 35.) Mercado grieved the Notice of Removal, and signed a Last Chance Agreement dated November 1, 2006 wherein he "agree[d] that the notice of removal dated September 21, 2006 was issued for just cause." (*Id*. at ¶ 36.) Mercado was reassigned to the Ronkonkoma Post Office effective November 2, 2006. (*Id*.) Because the foregoing incidents were all discrete acts, as discussed *supra*, Mercado was required to, but did not, timely exhaust these claims by contacting an EEO counselor within 45 days of the last act, *to wit,* his reassignment to another Post Office on November 2, 2006. *See, e.g., See Lightfoot,* 110 F.3d at 907:; *Gorokhovsky,* 2011 WL 2019423, at *5; *Plant,* 2007 WL 2187109, at *2-4. Accordingly, defendants' motion for partial summary judgment to dismiss the claims of these plaintiffs is granted.

## IV.    Plaintiffs' Claims of Disparate Impact

Defendants argue that plaintiffs' claims of disparate impact must be dismissed because plaintiffs failed to establish a prima facie case of disparate impact based on age under the ADEA. The court agrees.

In order to establish a prima facie case of disparate impact claim based on age, plaintiffs must show "that a facially neutral employment policy or practice has a significant disparate impact" on the protected class. *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 111 (2d Cir. 2001) (internal quotation marks and citation omitted). "This requires a plaintiff to (1)

identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of NY. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Disparate impact is proven through statistical evidence." *Ingenito v. Riri USA, Inc.*, No. 11-CV-2569 (MKB), 2013 WL 752201, at *12 (E.D.N.Y. Feb. 27, 2013) (citations omitted); *see also Teasdale v. City of New York,* No. 08-CV-1684 (KAM), 2013 WL 5300699, at *8 (E.D.N.Y. Sept. 18, 2013) ("statistical proof almost always occupies center stage in a prima facie showing of a disparate impact claim") (internal quotation marks and citation omitted). "The statistics must reveal that the disparity is substantial or significant, and "must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." *Chin*, 685 F.3d at 151 (internal quotation marks and citation omitted); *see Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) (same). Thus, the statistics "must reflect a disparity so great that it cannot be accounted for by chance." *EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 117 (2d Cir. 1998)

Aside from proffering general allegations of discrimination and complaints of discriminatory acts, the plaintiffs have failed to identify any specific facially neutral employment practices or policies of defendants that had a disparate impact on employees forty years and older. In Count II of the Amended Complaint, plaintiffs aver that defendants have "maintained policies and procedures which when applied, had a discriminatory impact on older employees including [p]laintiffs." (Amended Compl., ¶¶ 149-50.) In their Collective Response to Defendants' Discovery Demand, plaintiffs purport to identify numerous specific employment practices which they claim had a disparate impact upon employees 40 years of age and older either by subjecting them to discipline or enforcement while not subjecting younger carriers to

the same, including:

> (i) allocating insufficient time to complete routes; (ii) assigning an unreasonable amount of deliveries and/or unreasonable volume of mail per route; (iii) unsafe working conditions; (iv) loss of overtime and other compensation; (v) forcing and/or pressuring [p]laintiffs to retire; (vi) excessively and unnecessarily scrutinzing carriers' performance in the office an routes; (vii) adopting strict speed requirements relating to the amount of time carriers spent completing their routes; (viii) changing routes; (ix) allocating insufficient time to adapt to routes; (x) following carriers on routes, harassing them, and conducting "driver inspections"; (xi) the "Golden Hour"; (xii) the "18 and 8" rule; (xiii) the requirement that carriers handle no less than six inches of mail; (xiv) other policies regarding how much mail to carry at a given time; (xv) disciplining carriers for using sick leave; (xvi) confiscating Christmas tips; (xvii) forcing carriers to re-deliver mail that was mis-delivered by other carriers, despite not being on the overtime list; (xviii) requiring that [p]laintiffs only sort mail while on route; (xix) requiring that carriers scan the mailbox and place letters and flats in the mailbox in one motion; (xx) not allotting extra time for holiday deliveries; (xxi) requiring that carriers to finish their routes by 5:00 p.m. regardless of the nature of the specific deliveries; (xxii) requiring that carriers throw mail a specific way; (xxiii) forbidding the use of cell phones via hands-free device while in the mail truck but not delivering mail; (xxiv) requiring that carriers work on their days off, despite not being on the overtime list and without first exhausting the overtime list; (xxv) forbidding carriers from fingering unsorted mail to filter out certified mail; (xxvi) requiring that carriers ring the door and "run away" when delivering parcels that do not require a signature; (xxvii) restricting bathroom breaks for carriers with medical conditions who require bathroom breaks; and (xxviii) forbidding personal effects in carriers' vehicles.

(Pls. 56.1 Counterstmts ¶ 67; Defs. Ex. 46.) Plaintiffs cite additional employment practices

which had a disparate impact as follows

> violations of the provisions of the National Agreement between the NALC and USPS . . . Such violations included, but were not limited to, disciplining [p]laintiffs for arriving "late" even though they would arrive within the eight minute grace period; forcing [p]laintiffs to deliver additional pieces after clocking out, then failing to pay them for overtime pursuant to the union contract; following [p]laintiffs while on their route without identifying themselves, even when asked by [p]laintiffs; and by bringing them in for PDIs without representation by their respective shop stewards.

(*Id.*) Further, plaintiffs state that defendants'

> subjecting plaintiffs to discipline for accumulating three (3) unscheduled absences in a three(3) month period notwithstanding written policies which permit

employees to take additional leave without being subject to discipline was yet another employment practice which had a disparate impact on employees 40 years and older.

(*Id.*)  None of the foregoing allegations of discrimination constitute a specific employment policy that is facially neutral but nevertheless had a disparate effect.  Rather, plaintiffs' citations constitute a list of generalized complaints of discriminatory conduct.  *See Ingenito*, 2013 WL 752201, at *12 ("Disparate impact claims 'are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group'") (quoting *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012)).

Moreover, even assuming *arguendo* that such a policy existed, the statistical evidence offered by plaintiffs *viz.* (a) Defendants' Spreadsheet of Discipline issued Smithtown mail carriers from October 2006 to December 2006; (b) Defendants' List of Letter Carriers with a breakdown of pre-disciplinary interviews ("PDIs") and discussions by carrier; and (c) Plaintiffs' pre-disciplinary interview log maintained by shop stewards from November 2006 to February 2007, is insufficient to make a statistical showing that the challenged employment practices or policies had a disparate adverse impact on plaintiffs.

(Pls. Mem. in Opp. at 25-28, Exs. CCC, DDD, EEE, [SSS].)  Plaintiffs contend that

> [t]he Spreadsheet of Discipline demonstrates that carriers aged 40 and older received 72.3% of all discipline issued during from October 2006 through December 2006.  However, the List of Carriers with PDI and discussion information shows that full-time and part-time employees who are 40 years of age and older comprise only 67.4% of the carriers at Smithtown."  Plaintiffs then argue that upon examining the [p]laintiff's log of PDIs issued as recorded by shop stewards from November 2006 to February 2007 [Exh. EEE], we find that carriers who are 40 years of age and older comprised 74.9% of the total disciplinary incidents logged. [SSS] Consequently, the statistics show that employees 40 years of age and older were disproportionately disciplined and suffered a disparate impact as a result of [d]efendants' application of various facially-neutral employment practices.

(*Id.* at 27-28.)  An analysis of plaintiffs' statistical evidence fails to establish a statistical

significance between a specific employment practice and the disparity.  Instead, the Spreadsheet

of Discipline shows discipline issued to employees for a myriad of charges unrelated to any

specific employment policy.  For example, the charges range from insubordination, failure to

operate a vehicle in a safe manner, violation of a zero tolerance policy/ creating hostile

environment, missed scans, improper conduct, deviating from route without authorization,

unattended vehicle running, failure to secure mail to failure to be regular in attendance, no seat

belt, expired street time, cell phone violation.  Likewise the log of PDIs set forth individual

disciplinary occurrences with no connection to a specific facially neutral employment practice.

Thus, this evidence is insufficient to show a statistically significant disparity in fact exists.

In short, given that plaintiffs have failed to identify a policy or practice that had a

discriminatory impact and have not provided any statistics to establish a causal relationship

between a challenged employment policy or practice and disparity on employees 40 years or

older, plaintiffs cannot maintain a disparate impact claim under the ADEA.  Accordingly,

defendants' motion for partial summary judgment to dismiss plaintiffs' disparate impact claims

under the ADEA is granted.

## V.    Claims of Individuals Who Did Not Opt-In Before September 2010

Defendants maintain that the claims of  individuals who filed notices purporting to opt-in

after the court-ordered period of notice expired must be dismissed as untimely.

By Order dated April 15, 2010, this court conditionally certified this action pursuant to 29

U.S.C. § 216 of the FLSA and 29 U.S.C. § 626 of the ADEA as a collective action to include

mail carriers employed at the Smithtown Post Office from January 2006 to November 2007.  By

further Order dated June 1, 2010, this court granted plaintiffs a 90-day notice period from May

24, 2010 to on or about August 24, 2010 in which to notice persons eligible to "opt-in" as

plaintiffs.  Pursuant to 29 U.S.C. § 2216(b), an individual who seeks to opt-in to a collective

action must "give [] his consent in writing to become such a party and such consent [must be]

filed in the court in which such action is brought."  29 U.S.C. § 2216(b).

On March 23, 2012, approximately 19 months after the court-ordered notice period

expired, the following nine individuals filed notices to opt in: (1) Kevin Waterbury (Dkt. Entry

No. 85); (2) Charles Rosa (Dkt. Entry No. 85); (3) Hector Delgado (Dkt. Entry No. 87); (4) Janet

Lee Grau (Dkt. Entry No. 88); (5) David Lowenstein (Dkt. Entry No. 89); (6) Rose Trembly

(Dkt. Entry No. 90); (7) Louis Martin (Dkt. Entry No. 91); (8) Kenneth Connors (Dkt. Entry No.

92); and (9) Gina Pasquarella (Dkt. Entry No. 93).  There is no evidence in the record that these

nine individuals ever sought or received leave of the court to file late notices.  Plaintiffs' counsel

argues that the claims of these nine plaintiffs should not be dismissed because these plaintiffs

timely complied with the court-approved Notice of Pendency of ADEA Lawsuit requiring opt-in

forms be signed and sent to Plaintiffs' counsel's office, but that the failure to file these forms

with the court was due to a law office oversight.  (Pls. Mem. in Opp., at 28-30.)

When determining whether late opt-in consent forms should be deemed timely in an

FLSA action, courts balance various combinations of factors such as "(1) whether good cause

exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline

passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the

FLSA."  *Ruggles v. Wellpoint, Inc.,* 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009).   Considering these

factors, the court concludes that on balance the nine opt-in plaintiffs cannot be properly added.

Plaintiffs' counsel's excuse of an law office oversight does not constitute good cause for the

untimely consent filings of these individuals.  Moreover, given the procedural posture of this

case and the fact that all pretrial proceedings have been completed, the considerable delay of 19 months after the deadline expired and concomitant lack of notice to defendants of these claims until March 2012 would result in undue prejudice to defendants were these individuals permitted to opt in.  Finally, while it may be appropriate to justify a relaxation of the court imposed deadlines in certain cases given the remedial purposes of the FLSA, the circumstances here fail to provide such a basis.  Unlike the court in *Ruggles* which found *inter alia* that the impact of the inclusion of ten opt-in plaintiffs who filed their consent forms within a month of the court-imposed deadline to be "relatively benign," *see id.,* the circumstances here of a 19-month delay of the court-imposed deadline without good cause fail to provide such a basis.  Accordingly, defendants' motion for partial summary judgment to dismiss the claims of these individuals is granted.

## VI.    Claims of Plaintiff Virginia Sweeney under the Rehabilitation Act

In Count IV of the Amended Complaint, plaintiff Virginia Sweeney asserts a claim under the Rehabilitation Act, 29 U.S.C. § 791 et seq., alleging discrimination based on her disability identified as diabetes.  (Amended Compl., ¶¶ 87, 154-56.)  Specifically, plaintiff avers that she was denied FMLA leave for medical appointments, was written up for missing days of work while she attended doctors' appointments, and was denied a reasonable accommodation relative to her diabetes condition.  (*Id.*; Pls. 56.1 Counterstatement at ¶¶ 64-65.)

"The Rehabilitation Act prohibits disability-based discrimination on the part of government agencies and other recipients of federal funds."  *Sheafe-Carter v. Donohue*, No. 11-CV-4128, 2013 WL 4458746, at *4 (E.D.N.Y. Aug. 16, 2013).  Section 504 of the Rehabilitation Act provides, in relevant part, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination . . . under

any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a).

The Rehabilitation Act[11] defines "an individual with a disability" as one who (i) has a physical or

mental impairment which substantially limits one or more major life activities of such

individual"; (ii) has "a record of such impairment"; or (iii) is "regarded as having such an

impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1). "A plaintiff can make a prima

facie showing of failure to make a reasonable accommodation under the Rehabilitation Act by

establishing (1) that she is an individual who has a disability within the meaning of the statute,

(2) than an employer covered by the statute had notice of her disability, (3) that with reasonable

accommodation, she could perform the essential functions of the position [at issue], and (4) that

the employer has refused to make such accommodations." *Nieman v. Syracuse University Office

of Human Resources*, No. 5:12-CV-732(MAD/TWD), 2013 WL 2445098, at *6 (N.D.N.Y. June

5, 2013) (internal quotation marks and citations omitted).

Plaintiff Virginia Sweeney's claims that she was denied a reasonable accommodation and

retaliated against by reason of her diabetes fail because she has not made a prima facie showing

that she is disabled within the meaning of the Rehabilitation Act. Plaintiff has not set forth any

---

[11]The Rehabilitation Act and ADA "have similar regulatory schemes and in employment cases, the elements of a prima facie case and available defenses are identical under both statutes." *Sussle v. Sirina Protection Sys. Corp.,* 269 F. Supp. 2d 285, 303 n.3 (S.D.N.Y. 2003) (internal quotation marks and citations omitted). The definition of disability is identical under the Rehabilitation Act and ADA as are the basic concepts of discrimination and reasonable accommodation. *See Petrone v. Hampton Bays Union Free School Dist.,* No. 03-CV-4359 (SLT)(ARL), 2013 WL 3491057, at *23 n.11 (E.D.N.Y. July 10, 2013); *see also Roberts v. Royal Atl. Corp.,* 542 F.3d 363, 370 (2d Cir. 2008). Although the ADA Amendments Act of 2008 substantially changed the definition of the term "disability" as used in the ADA, and specifically abrogated much of the Supreme Court's precedent on the issue, the Amendments Act did not take effect until January 1, 2009 and was not made retroactive. Accordingly, this court applies the law that was in effect at the time of the complained-of acts occurred. *See Petrone,* 2013 WL 3491057, at *17 n.9; *see also Kravar v. Triangle Servs., Inc.*, No. 07-CV-6340, 2009 WL 805807, at *4 n.3 (S.D.N.Y. Mar. 27, 2009).

evidence that she has or is perceived to have a claimed disability that substantially limits one or more of her major life activities, and there is no evidence in the record that plaintiff is unable to perform the requirements of her job because of her condition. Moreover, the court finds nothing in the record to warrant a presumption that suffering from "diabetes by itself satisfies the definition of a person with disability for the purposes of establishing liability and recovering damages under the Rehabilitation Act." *Cherry v. Potter*, 709 F. Supp. 2d 213, 216 (S.D.N.Y. 2010) (citation omitted). Merely stating in conclusory fashion that diabetes is a disability within the meaning of the Rehabilitation Act without more is not enough to satisfy this element. *See Petrone*, 2013 WL 3491057, at *17 (observing that it was "insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment," and requiring that those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience . . . is substantial").

Finally, the record contains no support for plaintiff's suggestion that defendants perceived her as disabled within the meaning of the Act because she was a diabetic. That is, plaintiff has not set forth any evidence that defendants regarded her as "having an impairment that substantially limits a major life activity." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005); *cf. Smith v. United States Marshals Serv.,* No. 1:05 CV 106, 2006 WL 297725, at *4-5 (D. Vt. Feb. 7, 2006). In short, because there is no evidence in the record from which a jury could conclude that plaintiff Virginia Sweeney was an individual with a disability or that defendants perceived her as having a disability, plaintiff has failed to establish a prima facie case for her claims under the Rehabilitation Act. Accordingly, defendants' motion for partial summary judgment to dismiss plaintiff Virginia Sweeney's individual claims under the

Rehabilitation Act is granted.

**VII.    Defendants' Motion to Strike Plaintiffs' Demand for Trial By Jury**

Defendants' move to strike plaintiffs' demand for a jury trial of their ADEA claims of discrimination and retaliation.  In their opposition papers, plaintiffs state that they do not oppose defendants' motion to strike the demand for a jury trial on the ADEA claims.  (Pls. Mem. of Law in Opp., at 1.)  Accordingly, defendants' motion is granted.


## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgement is GRANTED.  In addition, defendants' motion for entry of an order to strike plaintiffs' demand for a trial by jury on the ADEA claims is GRANTED.

**SO ORDERED.**

Dated:  Central Islip, N.Y.
         October 23, 2013


_____/s_____
ARLENE ROSARIO LINDSAY
United States Magistrate Judge